# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 16-CV-5210 (JFB) (SIL)

ALDEAN ISAAC AND JULISSA ORTIZ,

Plaintiff,

VERSUS

NRA GROUP, LLC D/B/A NATIONAL RECOVERY AGENCY AND STEVEN C. KUSIC,

Defendants.

**MEMORANDUM AND ORDER**
March 28, 2018

JOSEPH F. BIANCO, District Judge:

Plaintiffs Aldean Isaac ("Isaac") and Julissa Ortiz ("Ortiz" and, together with Isaac, "plaintiffs") bring this putative class action against NRA Group, LLC ("NRA") and NRA's chief executive officer, Steven C. Kusic ("Kusic" and, together with NRA, "defendants"), for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq*. Plaintiffs assert two causes of action against both NRA and Kusic. The first cause of action alleges that debt collection letters sent by NRA to plaintiffs misrepresented the amount of debt that plaintiffs owed in violation of FDCPA Sections 1692g and 1692e. The second cause of action alleges that defendants violated FDCPA Sections 1692e and 1692f because the same collection letters falsely implied that NRA had the legal right to collect interest and fees from plaintiffs. Presently before the Court is plaintiffs' motion for partial summary judgment on the first cause of action, as against NRA. For the reasons that follow, the Court denies the motion.

I. BACKGROUND

A. Facts

The Court takes the following facts from the parties' Rule 56.1 Statements of Fact, affidavits, and exhibits, and construes the facts in the light most favorable to NRA as the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise indicated, the facts are either undisputed or uncontroverted by admissible evidence.

At some unspecified time, both Isaac and Ortiz incurred debt to Peconic Bay Medical Center ("Peconic"). (Pls.' 56.1 ¶ 3.) Thereafter, Peconic assigned the debts to NRA for collection. (*Id.* ¶ 5.)

NRA asserts that it sent debt collection letters dated August 20, 2015 to both

plaintiffs ("the August 2015 letters").[1] (Def.'s 56.1 ¶¶ 8, 18; Chille Aff. ¶¶ 6-9, Exs. B, C.) The August 2015 letter addressed to Ortiz indicates that she owes $1,254.93 for services rendered by Peconic on June 9, 2013, with an account number ending in 6681. (Chille Aff. Ex. C.) A detachable payment slip at the bottom of the letter states a "total due" of $1,254.93. (*Id.*) Ortiz does not dispute that this letter states an accurate amount owed. (Pls.' 56.1 ¶ 14.)

The August 2015 letter addressed to Isaac includes amounts owed for two separate dates of service. (Chille Aff. Ex. B.) Specifically, it states that Isaac owes $145.96 for services rendered by Peconic on August 9, 2013, with an account number ending in 3930, and $1,139.56 for services rendered by Peconic on August 19, 2013, with an account number ending in 0322. (*Id.*) A detachable payment slip at the bottom of the letter indicates that Isaac's "total due" is $1,285.52. (*Id.*) Isaac does not dispute that these amounts are accurate. (Pls.' 56.1 ¶ 11.)

NRA sent plaintiffs additional collection letters dated September 23, 2015 ("the September 2015 letters"). (Compl. Ex. 1.) The September 2015 letter to Ortiz repeats the information contained in the August 2015 letter: that she owes $1,254.93 for services rendered by Peconic on June 9, 2013, with an account number ending in 6681. (Chille Aff. Ex. F.) Immediately beneath that information, however, the September 2015 letter states that Ortiz owes the same amount— $1,254.93—for services rendered by Peconic on "00/00/00," with the same account number ending in 6681. (*Id.*) The detachable payment slip at the bottom of the letter indicates that Ortiz's "total due" is $2,509.86, or double $1,254.93. (*Id.*)

Similarly, the September 2015 letter to Isaac repeats the information contained in the August 2015 letter addressed to him: that he owes $145.96 for services rendered by Peconic on August 9, 2013, with an account number ending in 3930, and $1,139.56 for services rendered by Peconic on August 19, 2013, with an account number ending in 0322. (Chille Aff. Ex. E.) Immediately beneath that information, the letter states that Isaac owes the same amount—$145.96—for services rendered by Peconic on "00/00/00," with the same account number ending in 3930, and the same amount—$1,139.56—for services rendered by Peconic on "00/00/00," with the same account number ending in 0322. (*Id.*) The detachable payment slip at the bottom of the letter indicates that Isaac's "total due" is $2,571.04. (*Id.*)

According to NRA, the duplicate information was included in the September 2015 letters because it was mistakenly included in an excel spreadsheet received from Peconic Bay. (Def.'s 56.1 ¶¶ 18-20.) When NRA received the spreadsheet with the duplicate information, its system automatically processed the information and prompted the mailing of the September 2015 letters with the duplicate charges. (*Id.* ¶ 20.)

B. Procedural History

Plaintiffs filed the complaint on September 19, 2016. (ECF No. 1.) Defendants answered on November 17, 2016. (ECF No. 8.) Plaintiffs moved for summary judgment as to liability on the first cause of action against NRA on July 28, 2017. (ECF No. 41.) Defendants opposed

---

[1] At oral argument, plaintiffs' counsel disputed that the August 2015 letters were ever received by plaintiffs. Plaintiffs' reply brief, however, does not address the issue. In any event, the Court need not resolve this issue for purposes of this motion because plaintiffs are not entitled to summary judgment on the first cause of action even if the September 2015 letters were the initial communication, as alleged by plaintiffs.

the motion on August 31, 2017. (ECF No. 49.) Plaintiffs replied on September 15, 2017. (ECF No. 50.) The Court heard oral argument on October 20, 2017. At the conclusion of that argument, the Court held the motion in abeyance under Federal Rule of Civil Procedure 56 pending further discovery into whether any putative class members inquired about the at-issue letters or paid double the amount they owed. On November 20, 2017, defendants provided that discovery in further support of their opposition to plaintiffs' motion for summary judgment.[2]

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Under Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come

---

[2] More specifically, during oral argument, the Court asked the parties whether discovery had revealed how many of the putative class members, if any, overpaid or made an inquiry in response to receiving an at-issue debt collection letter. The parties informed the Court that discovery had not yet revealed that information; that discovery was ongoing; and that plaintiffs were attempting to obtain the information from defendants. The Court ordered defendants to provide the information to plaintiffs and to the Court. On November 20, 2017, NRA informed the Court that it had determined that, of the 12,550 putative class members, not one overpaid in response to receiving an at-issue debt collection letter. NRA further informed the Court that it was unable to determine whether any putative class members had made an inquiry regarding an at-issue letter.

Although this evidence supports defendants' position, whether the Court may consider such facts in deciding this motion is unclear, as "the trend in the Second Circuit" is to treat the question of whether a collection letter violates the FDCPA "as a matter of law." *E.g.*, *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *4 (E.D.N.Y. Mar. 31, 2016) (collecting cases). Other circuits do consider whether consumers were actually misled by a debt collection letter in making these determinations. *See, e.g.*, *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). In an abundance of caution, this Court has not considered the above-described evidence in holding that the September 2015 letters do not violate the FDCPA as a matter of law under the least sophisticated consumer standard, and thereby denying plaintiffs' summary judgment motion on those claims.

3

forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Thus, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Congress enacted the FDCPA in response to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692a. Because "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* §§ 1692a, 1692e. The FDCPA provides "examples of particular practices that debt collectors are forbidden to employ," but the list of examples "is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior." *Kropelnick v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

Here, plaintiffs have moved for summary judgment on their claims under FDCPA Sections 1692e and 1692(g). Section 1692e establishes a general prohibition against a debt collector's use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The section then includes a non-exhaustive list of prohibited conduct, including (1) "the false representation of the character, amount, or legal status of any debt," *id.* § 1692e(2)(A); (2) "threat[s] to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5); and (3) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10). Section 1692g(a) sets forth required disclosures for a debt collector's initial communication to a consumer. As relevant here, this section requires that the initial communication include "the amount of the debt." 15 U.S.C. § 1692g(a)(1).

A. Plaintiffs Have Standing

As a threshold matter, the Court concludes that plaintiffs have standing to bring the instant claims. Defendants argue that plaintiffs lack standing because they have not suffered imminent and concrete injuries. However, defendants ignore that the FDCPA "provides for liability for attempting to collect an unlawful debt" and "permits the recovery of statutory damages up to $1,000 in the absence of actual damages." *Miller v. Wolpoff & Abramson,*

*L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003). Court have accordingly "held that actual damages are not required for standing under the FDCPA." *Id.*; *accord Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 270 (E.D.N.Y. 2010) ("Courts have consistently interpreted the FDCPA to confer standing on plaintiffs who have suffered no actual harm, allowing them to sue for statutory violations." (collecting cases)). Thus, that plaintiffs received debt collection letters that potentially violate the FDCPA is sufficient to establish their standing in this case.

B. The September 2015 Letters Do Not Violate Section 1692e or Section 1692g

To determine whether a communication violates the FDCPA, courts apply an objective test based on the understanding of the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 359 (E.D.N.Y. 2013). According to the Second Circuit, the "least sophisticated consumer" standard is "an objective analysis that seeks to protect the naive from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d. Cir. 2005) (citations omitted). The Second Circuit has emphasized that "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (quoting *Clomo*n, 988 F.2d at 1318-19). Thus, a communication is considered false, deceptive, or misleading to the "least sophisticated consumer" only if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012). This is a question of law. *Shami v. Nat'l Enters. Sys.*, 914 F. Supp. 2d 353, 359 (E.D.N.Y. 2012).

Although "Congress painted with a broad brush" in drafting the FDCPA, "not every technically false representation by a debt collector amounts to a violation of the FDCPA." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d. Cir. 2012) (citation omitted). Instead, a communication violates the FDCPA if it "could mislead a consumer as to the nature and legal status of the underlying debt, or if it could impede a consumer's ability to respond to or dispute collection," or if it is "contradictory, vague, or threatening." *Id.* at 94-95 (collecting cases).

Here, the Court concludes that even the least sophisticated consumer—who is presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care—would not be misled by the September 2015 letters.[3] The fact that the second charges are for the same amounts and account numbers[4] as the first charges makes clear that they are duplicative. Further, the "00/00/00" service dates for the repetitive charges would indicate to even the least sophisticated consumer that those charges were included in error.

---

[3] Defendant argues that the least sophisticated consumer standard should not apply because plaintiffs immediately forwarded the collection letters to their attorneys. Because the Court concludes that even the least sophisticated consumer would not have been misled by the September 2015 letters, it need not reach this argument.

[4] Importantly, the account numbers referenced in the letters appear to be specific to each date of service. Put differently, the account number is not linked to a patient, and changes with each charge. Thus, the fact that the account numbers were the same would indicate that the charges were duplicative.

5

The fact that the detachable payment slips at the bottom of the September 2015 letters state an amount owed that is double the amount that each plaintiff actually owed does not render the letters misleading. Even the least sophisticated consumer is presumed to make "basic, reasonable and logical deductions and inferences." *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (citing *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 156 (E.D.N.Y. 2005)). Reading the September 2015 letters in their entirety, the least sophisticated consumer could readily determine that the "total due" on the payment slip included the duplicative charges above.[5] In short, the only "basic, reasonable, and logical inference" to be drawn from the September 2015 letters is that the duplicative charges were included by mistake, and were not actually owed. Thus, the duplicative charges, although "false in some technical sense," would not have "misle[d] a consumer as to the nature and legal status of the underlying debt," or "impede[d] a consumer's ability to respond to or dispute collection." *Gabriele*, 503 F. App'x at 94-95.[6]

---

[5] The cases relied on by plaintiffs are distinguishable. In *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524 (S.D.N.Y. 2013), *Crafton v. Law Firm of Jonathan B. Levine*, 957 F. Supp. 2d 992 (E.D. Wis. 2013), and *Mehling v. Fullet Rosenlund Anderson PC*, No. 16 C 5921, 2016 WL 7231931 (N.D. Ill. Dec. 12, 2016), the at-issue debt collection letters sought to collect more than the debtors owed without any indication, on the face of the letters, that an error had occurred. In other words, the debt collectors in those cases sought to collect lump sums in excess of what the debtors owed without indicating how the debt collector had arrived at the lump sum. *Christopher v. RJM Acquisitions LLC*, No. CV-13-02274-PHX-JAT, 2015 WL 437541 (D. Ariz. Feb. 3, 2015) is also inapposite, as that case involved attempts to collect a debt from a plaintiff who was not a debtor to the relevant creditor.

[6] The Court also notes that there is an additional factual issue as to whether the September 2015 letters

## IV. CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion for summary judgment on the first cause of action against NRA.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: March 28, 2018
Central Islip, NY

\* \* \*

Plaintiffs are represented by Craig B. Sanders, David M. Barshay, and Jonathan Mark Cader of Sanders Law, PLLC, 100 Garden City Plaza, Garden City, NY 11530 and Todd D. Muhlstock of the Muhlstock Law Firm PC, 100 Garden City Plaza, Garden City, NY 11530. Defendants are represented by Hilary Felice Korman of Warshaw Burstein LLP, 555 Fifth Avenue, New York, NY 10017 and Scott Evan Wortman and Jacquelyn Alena DiCicco of Blank Rome LLP, 405 Lexington Avenue, New York, NY 10174.

---

were initial communications subject to Section 1692g. Specifically, NRA has submitted evidence that the August 2015 collection letters were the initial communication between NRA and plaintiffs. (Def.'s 56.1 ¶¶ 8, 18; Chille Aff. ¶¶ 6-9, Exs. B, C.) However, because the Court concludes that, even assuming *arguendo* that the September 2015 letters were initial communications, the letters do not violate FDCPA Section 1692g, the Court need not address this issue.