# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 16-CV-5210 (JFB) (SIL)

ALDEAN ISAAC AND JULISSA ORTIZ,

Plaintiffs,

VERSUS

NRA GROUP, LLC D/B/A NATIONAL RECOVERY AGENCY AND STEVEN C. KUSIC,

Defendants.

**MEMORANDUM AND ORDER**
March 29, 2019

JOSEPH F. BIANCO, District Judge:

Plaintiffs Aldean Isaac ("Isaac") and Julissa Ortiz ("Ortiz" and, together with Isaac, "plaintiffs") bring this putative class action against NRA Group, LLC ("NRA") and NRA's chief executive officer, Steven C. Kusic ("Kusic" and, together with NRA, "defendants"), for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq*. Plaintiffs assert one cause of action ("Count I") against both NRA and Kusic, alleging that debt collection letters sent by NRA to plaintiffs in September 2015 misrepresented the amount of debt that plaintiffs owed in violation of FDCPA Sections 1692g and 1692e. The second cause of action ("Count II") alleges that both defendants violated Sections 1692e and 1692f of the FDCPA because the September 2015 letters falsely implied that NRA had the legal right to collect interest and fees from plaintiffs.

In a Memorandum and Order, dated March 28, 2018 (ECF No. 69), the Court denied plaintiffs' motion for partial summary judgment on the first cause of action as against NRA. In particular, the Court held that "[e]ven the least sophisticated consumer – who is presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care – would not be misled by the September 2015 letters." (*Id*. at 5.)

Presently before the Court is defendants' motion for summary judgment. In response to the defendants' summary judgment motion, plaintiffs request that the second cause of action be voluntarily dismissed, and the Court grants that request. With respect to the first cause of action, defendants argue that the Court's ruling in the March 28, 2018 Memorandum and Order – that is, that the September 2015 Letters do not violate Section 1692e or Section 1962g – warrants

summary judgment in their favor. The Court agrees. Without repeating its analysis here, the Court incorporates its entire analysis from the March 28, 2018 Memorandum and Order and, for the reasons set forth in that opinion, concludes that the defendants are entitled to summary judgment on the only remaining cause of action because the September 2015 Letters did not violate Section 1692e or Section 1692g as a matter of law.[1] Defendants also argued, in the alternative, that Kusic is not a debt collector within the meaning of the FDCPA. For the reasons that follow, the Court holds in the alternative that the uncontroverted evidence supports the conclusion that Kusic does not have individual liability under the FDCPA in this case.

I. BACKGROUND

A. Facts

The Court set forth the background facts of this case in its March 28, 2018 Order denying plaintiffs' motion for partial summary judgment on the first cause of action against NRA, *Isaac v. NRA Grp., LLC*, No. 16CV5210JFBSIL, 2018 WL 1532061 (E.D.N.Y. Mar. 28, 2018), and does not repeat them here. However, the Court does take the following relevant facts from defendants' Rule 56.1 Statement of Fact, affidavits, and exhibits, and construes the facts in the light most favorable to plaintiffs, as the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise indicated, where defendants' 56.1 statement is cited, that fact is undisputed, or plaintiffs have pointed to no evidence in the record to contradict it.[2]

Kusic is the CEO of NRA, with a primary focus in marketing and vendor relations. (Def.' 56.1 ¶¶ 32-33.) As CEO, Kusic does not participate in the collection of debt from consumers (*e.g.*, creating, reviewing, approving, or signing letters sent to consumers). (*Id.* ¶ 33.)

Kusic had no contact with, nor was he personally involved in the collection of plaintiffs' debts and he was not identified in the August and September collection letters as a party attempting to collect plaintiffs' debts. (*Id.* ¶¶ 34-35.) In accordance with his general practice as CEO, Kusic did not create, review, approve, or sign these collection letters. (*Id.* ¶ 36.) Additionally, both plaintiffs were unaware as to who Kusic was or why he was named as a defendant. (*Id.* ¶ 37.)

B. Procedural History

Plaintiffs filed the complaint on September 19, 2016. (ECF No. 1.) Defendants answered on November 17, 2016. (ECF No. 8.) Plaintiffs moved for summary judgment as to liability on the first cause of action against NRA on July 28, 2017. (ECF No. 41.) Defendants opposed the motion on August 31, 2017. (ECF No. 49.) Plaintiffs replied on September 15, 2017. (ECF No. 50.) The Court heard oral argument on October 20, 2017. At the conclusion of that argument, the Court held the motion in abeyance under Federal Rule of Civil Procedure 56 pending further discovery into

---

[1] Plaintiff does not dispute that the Court's March 28, 2018 Memorandum and Order supports summary judgment for defendants on Count I and, in fact, requested that the Court enter final judgment for defendants on that cause of action in order to allow plaintiffs to appeal.

[2] In addition, although defendants' Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record. The Court additionally notes that plaintiffs did not submit their own 56.1 Statement of Facts and, in any event, have not cited in their opposition papers to any evidence contradicting the evidence contained in defendants' 56.1 statement.

whether any putative class members inquired about the at-issue letters or paid double the amount they owed. On November 20, 2017, defendants provided discovery in further support of their opposition to plaintiffs' motion for summary judgment. On March 28, 2018, the Court denied plaintiffs' partial motion for summary judgment on the first cause of action, as against NRA. (ECF No. 69.) The Court held that the duplicative collection letters in issue did not violate Section 1692e or 1692g. On June 6, 2018, defendants moved for summary judgment on all of plaintiffs' claims. (ECF No. 74.) On August 8, 2018, plaintiffs filed a declaration in response to defendants' motion requesting that the Court dismiss Count II of the complaint. Plaintiffs also requested that the Court issue a final judgment for defendants as to Count I (based upon its March 28, 2018 Memorandum and Order) as plaintiffs intended to appeal. (ECF No. 81.) The Court advised the parties that, before issuing a final judgment, the Court wanted to address the alternative argument raised by defendants with respect to Kusic's lack of individual liability under the FDCPA. On November 16, 2018, the parties had a status conference regarding plaintiffs' intentions regarding Kusic, who was not part of plaintiffs' prior summary judgment motion. Plaintiffs indicated they would oppose defendants' summary judgment motion as to Kusic on the issue of individual liability. (ECF No. 88.) Plaintiffs then filed their opposition on December 7, 2018 (ECF No. 89), and defendants filed their reply on February 20, 2019 (ECF No. 93.). The Court has considered all of the parties' submissions.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Under Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence

3

is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Thus, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

Congress enacted the FDCPA in response to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692a. Because "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* §§ 1692a, 1692e. The FDCPA provides "examples of particular practices that debt collectors are forbidden to employ," but the list of examples "is non-exhaustive, and the FDCPA generally forbids collectors from engaging in unfair, deceptive, or harassing behavior." *Kropelnick v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).

Here, defendants have moved for summary judgment as against Kusic, arguing that he was not a personally involved debt collector within the meaning of the FDCPA, and therefore cannot be held liable for the debt collection actions of NRA. (Def. Mot. at 8.)[3] The Court agrees.

"While the Second Circuit has yet to rule explicitly on the issue of individual FDCPA liability, many courts, including courts within this district, have recognized that individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct." *Baltazar v. Houslanger & Assocs., PLLC*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *17 (E.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, No. 164982

---

[3] In opposition, plaintiffs first suggest in a footnote that insufficient discovery has prevented them from determining Kusic's involvement with the collection efforts. (Pl. Opp. at 1, n.1.) In addition, plaintiffs assert that Kusic is individually liable under the FDCPA due to his actions and omissions concerning the NRA's overbilling (*Id*. at 2-4.) First, the Court finds plaintiffs' discovery argument to be without merit. During the November 16, 2018 telephone conference, when the issue of additional discovery was discussed, plaintiffs' counsel indicated that he did not believe he needed additional discovery before opposing defendants' summary judgment motion on this ground, because he had conducted Kusic's deposition. (ECF No. 88.) Moreover, although counsel now makes this conclusory statement in a footnote in the opposition papers about the need for discovery, no affidavit or declaration was filed under Rule 56(d) of the Federal Rules of Civil Procedure indicating what additional discovery would be needed. With respect to the merits, as discussed *infra*, the Court finds insufficient evidence in the record that would allow Kusic to be held individually liable for any alleged overbilling by NRA. To the extent plaintiffs argue that individual liability exists under the FDCPA due to inaction (even in the absence of personal involvement), the Court disagrees.

4

(JMA)(AKT), 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) (quoting *Krapf v. Prof'l Collection Servs., Inc.,* 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007)); *see also McCrobie v. Palisades Acquisition XVI, LLC*, 15-CV-18, 2019 WL 643523, at *8-9 (W.D.N.Y. Feb. 15, 2019) (collecting cases); *Williams v. Prof'l Collection Servs., Inc.*, No. CV 04-286 (JS)(ARL), 2004 WL 5462235, at *4 (E.D.N.Y. Dec. 7, 2004) (citing *Musso v. Seiders*, 194 F.R.D. 43, 46-47 (D. Conn. 1999)); *Ohlson v. The Cadle Co.,* No. 04 Civ. 3418 DRH/ETB, 2006 WL 721505, at *3 (E.D.N.Y. Mar. 21, 2006) (officers and employees may be "jointly and severally liable with the agency where they have affirmatively acted"). This conclusion is completely consistent with the plain meaning of the statutory language.[4]

Thus, this Court agrees with the analysis in those decisions and holds that this personal engagement requirement is met if the individual defendant engaged in some affirmative action with respect to the debt collection, such as where the individual defendant made repeated phone calls to the plaintiff, *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994); signed material documents sent to the plaintiff, *Baltazar*, 2018 WL 3941943, at *17; made a "series of abusive and deceptive phone messages," *Williams*, 2004 WL 5462235, at 4; had "final supervisory authority" over the collection letters, *Winslow v. Forster & Garbus, LLP*, No. CV 15-2996 (AYS), 2017 WL 6375744, at *14 (E.D.N.Y. Dec. 13, 2017), *appeal withdrawn*, No. 18-116, 2018 WL 1840195 (2d Cir. Apr. 6, 2018); acted in "an abusive, harassing, and deceptive manner contrary to the standards of civilized society, and contrary to the standards employed by others in its industry," *Krapf*, 525 F. Supp. 2d at 326; or was the "sole employee responsible for collecting plaintiffs' debt." *Jordan v. Tucker, Albin & Assocs., Inc.*, No. 13CV6863JMASIL, 2017 WL 2223918, at *6 (E.D.N.Y. May 19, 2017), *reconsideration denied sub nom. Jordan v. Tucker, Albin & Assocs.*, No. 13-CV-6863-SIL, 2018 WL 4259987 (E.D.N.Y. Sept. 6, 2018).

Here, the uncontroverted evidence demonstrates that Kusic was not "personally involved" in the collection efforts of plaintiffs' debt. As noted *supra*, it is undisputed that Kusic was not personally involved in contacting any consumers (including plaintiffs) in connection with NRA's debt collection; the disputed collection letters did not identify Kusic as an individual attempting to collect plaintiffs' debts; and, as CEO, he did not "create, review, approve, or sign the debt collection letters sent to plaintiffs." (Def. 56.1 ¶¶ 33-36.)

In opposition, plaintiffs do not point to any evidence that Kusic acted affirmatively, but rather ask the "Court to determine whether under the circumstances of this case the owner and CEO of a debt collection agency may be held liable under the FDCPA where he may not have 'acted affirmatively' in the collection of individual accounts, but, rather, did nothing upon discovering his agency grossly overbilled more than 12,000 New York consumers." (Pls.' Opp. at 1.)

As a threshold matter, plaintiffs' contention that nothing was done upon discovering the duplicate files is unsupported by the record. In fact, the uncontroverted evidence in the record is that, upon learning

---

[4] A debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

of the duplicate amounts, NRA eliminated the files and no further attempts were made to collect on them. (*See* Chille Affidavit ¶ 17) ("On October 6, 2015, following notification by Peconic Bay as to the inadvertent August 2015 placements, Plaintiffs' duplicate accounts (and others) were eliminated from Defendants' files. No further attempts were made to collect on them. This took place well prior to the commencement of this litigation (on September 19, 2016) and was only a few weeks after the September 23, 2015 letters were sent to Plaintiffs.") Instead, plaintiffs essentially argue that Kusic should have done more in his role at NRA. Specifically, plaintiffs contend that, at the time plaintiffs were double-billed, there "was no one at NRA responsible to ensure such did not happen" and that "Kusic had still not assigned anyone at NRA to that task." (Pl. Opp. at 3.) After NRA and Kusic closed out plaintiffs' double-booked files in the NRA's internal system, Kusic did not take any other action (*i.e.*, sending out notifications to those affected). (*Id.*) Plaintiffs then speculate that Kusic's failure to provide instructions to staff "can only be deemed intentional." (*Id.*) The Court declines to find individual liability here based on alleged inaction or insufficient supervision. *See, e.g., Zucker v. Porteck Glob. Servs., Inc.*, No. 13-CV-2674 JS AKT, 2015 WL 6442414, at *9 (E.D.N.Y. Oct. 23, 2015) (holding that general assertions that individual defendant personally controlled the collection agencies policies and knowingly participated in the sending of collection letters were insufficient to sustain individual FDCPA liability); *see also Headlee v. Wolford*, No. CV 109-092, 2011 WL 13285064, at *7 (S.D. Ga. Sept. 7, 2011) ("Notably, the liability of a corporate shareholder or officer does not attach merely as a result of his status within the corporation, but rather depends on his personal participation in conduct that violated the FDCPA.").

In sum, given the uncontroverted evidence in the record that Kusic had no personal involvement in connection with the collection of plaintiffs' debts, the Court concludes that Kusic cannot have any individual liability under the FDCPA for any violations under 15 U.S.C. §§ 1692g and 1692e.

IV. CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Court's March 28, 2018 Memorandum and Order, the Court grants defendants' motion for summary judgment as to Count I. In addition, the Court grants plaintiffs' request to dismiss Count II. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: March 29, 2019
Central Islip, NY

\* \* \*

Plaintiffs are represented by Craig B. Sanders, David M. Barshay, and Jonathan Mark Cader of Barshay Sanders, PLLC, 100 Garden City Plaza, Suite 500, Garden City, NY 11530 and Todd D. Muhlstock of the Muhlstock Law Firm PC, 100 Garden City Plaza, Garden City, NY 11530. Defendants are represented by Hilary Felice Korman, Scott Evan Wortman, and Jacquelyn Alena Dicicco of Blank Rome LLP, 405 Lexington Avenue, New York, NY 10174.